## WILLIAM POOL v. WEDEMEYER & SCHULTE.

(Case No. 1430.)

1. PUBLIC POLICY AS AFFECTING JUDICIAL CONSTRUCTION.— With the policy of a law the courts have but little concern. In construing a law the legislative intention should be ascertained from its language in connection with the every-day wants and business of the people for whose government the same was enacted. That being ascertained and applied, the duty of the court is performed whether the policy thereby subserved be good or bad.

2. MECHANIC'S LIEN.— Art. 3166 (R. S.) having reference to verbal contracts, does not require that the terms of a verbal contract shall be set out with the bill of particulars to be recorded, but on the contrary it was never intended that verbal contracts should be set out, or that contracts by law implied from the acts of the parties should be put into words and recorded.

3. MECHANIC'S LIEN.— When an account is filed under the statute to secure a mechanic's lien under a verbal contract, if it states that the work was done at the request and with the approval of the party to be charged, it is a sufficient compliance with the statute.

4. MECHANIC'S LIEN — BILL OF PARTICULARS.— When an entire job is done under contract, the same reason and necessity do not exist for giving the various items of work or material as would in a case where there was no express contract for doing the entire job for a sum certain.

5. MECHANIC'S LIEN — ACCOUNT— CERTAINTY.— There was an express verbal contract to paint a house for $405. The mechanics made out, filed and recorded under the statute the following account:

"GALVESTON, March 1, 1874.
"Mr. Sandford —
"To WEDEMEYER & SCHULTE, Dr.
"HOUSE AND SIGN PAINTERS, GLAZIERS, GRAINERS AND PAPER-HANGERS.
"To painting house of Mr. Pool, in and outside, two coats....$405."
Held:
(1) It was unnecessary to set forth each item of work; the con-

tract being for the entire job for a sum certain, the whole was properly aggregated in one item.

(2) The fact that the account did not bear the exact date when the work was completed was immaterial.

6. CONSTABLE — SERVICE. — The certificate of a constable to the fact of service of a copy of an account on which a mechanic's lien is claimed, is not evidence.

7. EVIDENCE — MECHANIC'S LIEN. — When the agreement of counsel in a cause to enforce a lien for materials furnished in building is that the material was furnished and charged to the contractor who did the work, it is not error to permit evidence of a verbal agreement by the owner of the property to pay for the same, he being the original defendant, the statute of frauds not being pleaded.

8. .PRACTICE. — A party must make the objections on which he relies in the court below, and such as are not there made cannot be made in the supreme court for the first time.

9. MECHANIC'S LIEN — PRACTICE. — It is no objection to an order of sale to enforce a mechanic's lien on community property against the husband's interest that the heirs of the wife, who had died during litigation, were not made parties. The fact that equities may arise in the future affords no reason why the husband's interest should. not be sold to satisfy the lien.

ERROR from Galveston. Tried below before the Hon. Wm.. H. Stewart.

John H. Sandford brought suit on the 21st of May, 1874, against Wm. Pool, to recover $6,000, alleged to be due him as the contract price agreed to be paid him for supplying all material and doing all work in the construction and completion of a dwelling house for said Pool on lots 5, 6 and 7, in block 264, in Galveston, and also for "extra" work thereon the sum of $1,957.50. He claimed "that the work and material furnished by him in his business as a mechanic gave him a lien upon the dwelling and lots."

On the 2d of April, 1875, C. H. Moore & Co. filed their petition of intervention, claiming a lien on the building and lots for material which was used in the construction of the building, of the value of $802.85.

On the 16th of April, 1875, Wedemeyer & Schulte, as

artisans and painters, filed their petition of intervention, wherein they claimed the sum of $405 from Wm. Pool for painting the house, asserting a lien.

To the petition of Sandford, Wm. Pool pleaded general demurrer, special exceptions to all that part of his petition asserting a lien, the general issue, and especially that he entered into a contract in writing (which was set forth) with Sandford, by which he undertook to furnish all material and build a house on the lots, which were the homestead of Pool, he being a married man and head of a family, with a wife and children occupying the same; that the house was to be completed, material furnished, work to be done, including the painting thereof, in first-rate mechanical style, for the price of $6,000; that he, Pool, had overpaid Sandford to the extent of amounts set forth in schedule, aggregating $6,662.84, and pleaded the excess paid in reconvention.

To the interventions of Wedemeyer & Schulte and C. H. Moore & Co., Pool pleaded demurrers and special exceptions, general denials, and specially that he had paid to Sandford the full amount due to him in good faith before any claim by them was made, or notice duly served on him of any such demand in their favor.

At the spring term, A. D. 1875, the court overruled all the demurrers of Pool, and submitted the cause to a jury upon special issues, and upon the verdict returned by them the court rendered a judgment in favor of Pool against Sandford for $741.71 and costs, and a judgment in favor of Wedemeyer & Schulte for $405, and in favor of C. H. Moore & Co. for $802.85, against Pool, and also decreed a lien in favor of the intervenors respectively on the lots and improvements, and ordered a sale thereof. Pool moved for a new trial, which was overruled, to which Pool excepted, and appealed from the judgments pronounced in favor of said *intervenors* to the supreme court, and the supreme court, at January term, A. D.

1880, reversed the same and remanded the case.   52 Tex., 621.

The cause came on again for trial before the district court at the December term, 1881, upon the issues joined between the intervenors, Wedemeyer & Schulte, and C. H. Moore & Co., the defendants in error, and Wm. Pool, the plaintiff in error, which was determined by the judge upon the facts and the law, a jury being waived.   The court rendered a judgment in favor of Wedemeyer & Schulte for $597.90, and that they have a lien upon the interest of Wm. Pool on the property to secure said debt, and in favor of C. H. Moore & Co.. for $867 for materials furnished by them to the defendant in the construction of improvements on the lots, and that they have a lien on Wm. Pool's interest in the lots and improvements to secure $146.89 of that amount, and foreclosing liens and decreeing that an order of sale be issued to the sheriff of Galveston county to seize and sell all the interest of Wm. Pool in the property, and apply the proceeds thereof to the satisfaction of the liens, and the balance, if any, to pay over to Pool, and that the purchaser have a writ of possession, which the sheriff was directed to execute by placing the purchaser in possession.   Pool moved for new trial, which was overruled, and filed petition for writ of error.

The petition of intervention of Wedemeyer & Schulte alleged that they were mechanics; that about the —— day of November, 1873, at the request of John H. Sandford, a contractor, then employed by Pool to erect a house on lots 5, 6 and 7, in block 264, in Galveston, owned by said Pool, they furnished the necessary material and painted said building, doing the work required by the agreement between said Sandford and themselves; that, in consideration of the work done and material supplied, Sandford promised, and became liable, to pay them $405, which he refused to pay; that during the progress of the work,

being distrustful of Sandford, they were about to quit, when Pool requested them to complete the work, and in consideration thereof promised to pay them $405; that, relying on such promise, they proceeded to finish the painting, believing that defendant would pay or cause them to be paid; that defendant was indebted to them $405, which he refused to pay; that their account for such work was made out, verified by oath, and the same recorded in the office of the district clerk of Galveston county, on the 18th of March, 1874, and a copy thereof duly served, accompanied by a description of the house and lots upon which, as mechanics, intervenors claimed a lien to secure the payment of their debt. They prayed to be admitted to intervene and for judgment for their debt and foreclosure of lien.

To this petition of intervention Pool excepted generally for insufficiency, and specially to all that part of it which claimed a lien on the property. The court overruled the exceptions.

Pool pleaded specially that he had paid to Sandford the full amount due to him in good faith before any claim by them was made on him; denied all liability as to their alleged debt and lien.

The following account was read in evidence by Wedemeyer & Schulte:

"GALVESTON, TEXAS, March 3, 1874.
"*Mr. William Pool —*
                        "To WEDEMEYER & SCHULTE, *Dr.*
"HOUSE AND SIGN PAINTERS, GLAZIERS, GRAINERS AND PAPER-HANGERS.
"To painting house, out and inside, two coats......$405."

The affidavit was to the effect that the affiant, F. Wedemeyer, was partner in the firm of Wedemeyer & Schulte; that Wm. Pool was justly indebted to the firm in the sum of $405 for painting a house belonging to Pool, as per annexed account, which is correct, and owing

to affiant's firm; that the work was performed on the building situated on lots 5, 6, and 7, in block No. 264, in Galveston, Texas; that said firm, as mechanics and artisans, have a lien on said lots and improvements for the payment of their debt; that said work was done at the request and with the approval of Pool. This affidavit was made and subscribed before D. Wakelee, clerk of the county court of Galveston county, on the 18th of March, 1874, who adds the following certificate under his hand and seal: "The foregoing annexed mechanic's lien was filed for record in this office March 18, 1874, and recorded March 27, 1874." To the introduction of all which Pool objected on the ground that the same was not admissible to fix a lien, nor as garnishing process, under the allegations of intervenors' petition; that the same was not such a bill of particulars as the statute required to be made; that it was uncertain as to the elements of any contract or the terms thereof supposed to exist between the intervenors and Pool, nor sufficiently certain or specific for the purpose of fixing a lien under the statute; which objections were overruled and the evidence admitted.

The testimony was conflicting in regard to a promise by Pool to pay the account of $405 for painting.

The following facts were admitted by written agreement of counsel on file:

1. The contract price for the building of defendant, erected by plaintiff, was $6,000. The contract was in writing and was not recorded.

2. The value of extra work done thereon by plaintiff, which was authorized and accepted by defendant, was $781.

3. The value of the material furnished by C. H. Moore & Co. was $802.85, and was sold and charged by them to Sandford.

4. But the defendant had knowledge of the furnishing of material by C. H. Moore & Co., on or about Novem-

ber 4, 1873, and was then indebted to plaintiff in the sum of $1,200.

5. The work done by Wedemeyer & Schulte amounted to $405.

6. Defendant paid plaintiff before March 18, 1874, $6,212, and on April 12th paid him $85.

*Willie & Cleveland,* for plaintiff in error.

I. That the court erred in overruling the defendant's exceptions to the petition of intervention of Wedemeyer & Schulte. This is relied on as a proposition. Pasch. Dig., 7112; Pool's case, 52 Tex., 621; Tinsley *v.* Boykin, 46 Tex., 598; Ferguson *v.* Ashbel & Simpson, 53 Tex., 245; Sens *v.* Trentune, 54 Tex., 218; Lee *v.* Phelps, id., 367; Lee *v.* O'Brien, id., 635; Holman *v.* Criswell, 13 Tex., 38; Gould on Plead., ch. 3, sec. 64; ch. 4, sec. 15, p. 176; sec. 29, p. 182.

II. The court erred in overruling defendant's objections to the introduction in evidence of the exhibit consisting of the account of Wedemeyer & Schulte and affidavit thereto and certificate of authentication, and record thereof offered by Wedemeyer & Schulte in support of their claim of mechanic's lien, as set forth in defendant's bill of exceptions thereto. This is relied on as a proposition. (Same authorities as above.)

III. The court erred in decreeing and establishing a mechanic's lien in favor of Wedemeyer & Schulte. This assignment is relied on as a proposition.

IV. Wedemeyer & Schulte, having bestowed their material and labor by contract with Sandford, who was under contract with Pool to do the work and furnish the material, and Pool having paid Sandford the full contract price before the 18th of March, 1874, there could be no personal liability from Pool to Wedemeyer & Schulte upon the pleadings and the evidence properly adduced thereunder. Pasch. Dig., art. 3875; Brandt on Surety-

ship, secs. 61–64; same as before cited; also Holmes *v.*
Sands & Johnson, 26 Miss., 630; 1 Sandf., 14; Phillips
on Mech. Lien, pp. 270, 308; 1 E. D. Smith, 646, 661; 3
Oregon, 372; 24 Wis., 563.

V. The court erred in overruling the defendant's ob-
jections to the introduction in evidence by C. H. Moore &
Co. of their account and affidavit, and authentication of
record and indorsements thereon in support of their claim
of lien, and in holding that the indorsement of B. M. Flem-
ing, the constable, on said account and affidavit, called
exhibit B, was sufficient evidence of the matters con-
tained in said indorsement without other proof of the fact
of service of certified copy of the lien claimed as set forth
in bill of exceptions.  Same as before cited; also Pasch.
Dig., arts. 987, 1463; 1 Greenleaf on Ev., sec. 498; Leon
Co. *v.* Houston, 46 Tex., 577; 25 Tex., 687; 25 Tex. Sup.,
137; 7 Tex., 322.

VI. The court erred in admitting or considering (against
the objection of defendant) the evidence of the witness
Schadt, in opposition to or contravening "the facts
agreed upon and considered established" by the written
agreement of counsel herein, filed December 10, 1880.

VII. The court erred in decreeing a foreclosure of lien
and ordering sale of the property, or of the interest of
Wm. Pool therein, it appearing that the property was the
community of Wm. Pool and wife, who died after the
institution of the suit, leaving children; they were neces-
sary parties to this suit seeking to foreclose the lien
claimed, and no judgment for sale of said property
under any supposed lien claimed by the said intervenors,
and either of them, could or ought to have been rendered
without the heirs of the deceased wife had been brought
before the court.  This assignment is relied on as a prop-
osition.  Pasch. Dig., art. 4642; S'' ''y's Eq. Pl., secs. 172,
180, 181, 185, 188, 193, 201, 236; Hall *v.* Hall, 11 Tex.,
541; Connell *v.* Chandler, id., 253; Miller *v.* Rogers, 49

Tex., 398; Buffalo Bayou Ship Ch. Co. v. Brady, 45 Tex., 6; Arnold v. Gamble, 49 Tex., 527; Newland v. Holland, 45 Tex., 589; Lockhart v. Ward, id., 227.

*James B. Stubbs* and *Harcourt & Spencer*, for defendants in error.

STAYTON, ASSOCIATE JUSTICE.— The question of the sufficiency of the petition of intervention of Wedemeyer & Schulte was involved in the decision of this cause when before this court upon former appeal, and it was then decided, that while it did not show that Sandford was entitled to a mechanic's lien, yet that the same was sufficient if sustained by evidence to give them a lien as against Pool as principal contractors; and we now see no sufficient reason to authorize us to come to a contrary conclusion.

It is claimed that the court erred in establishing a lien in favor of Wedemeyer & Schulte. The grounds upon which it is claimed that the court erred in this regard are not clearly set out, either in the assignments of error or brief of counsel.

The grounds relied upon in oral argument are, in substance:

1st. That the paper filed and recorded, under which the lien is claimed, does not clearly set out what the contract was.

2d. That the paper recorded does not contain a sufficient bill of particulars.

The statute upon which the rights of the parties in this cause rest was enacted to secure to the laboring man the just reward for his toil, and to him who furnishes material to erect or repair the home, house, or other improvement of another, an honest compensation therefor.

There is no subject within the range of judicial action in which construction has been so diverse and varied as that applicable to laws regulating the liens of mechanics

and material men, and some of the courts of the different states seem to have felt that they were authorized, in some instances, to engraft upon the plain terms of the statute, by construction, principles operating harshly or beneficially to the respective parties, as a supposed public policy might seem to indicate as proper.

The matter is well stated by an elementary writer as follows: "Among the decisions of the various states, there is an apparent conflict as to what should be deemed the policy of the law applicable to those l'ens, and the true spirit in which these statutes should be interpreted. Adjudications will be found declaring it to be against the genius of government to make distinctions between its citizens, or to prefer one class by granting them special privileges in derogation of the rules of common law, and consequently those laws should be construed strictly; there are others equally numerous to the effect that correct policy dictates the fostering of this remedy for purposes of improvement of the country and the protection of often unlettered men, and that a free interpretation should be given them in favor of the mechanic." Phillips on Mechanics' Liens, 24.

With the policy of a law the courts should have but little concern; to shape that pertains to another department of the government. The simple question in the construction and application of a statute is, what was the legislative intention in its enactment, as the same is to be found in the language in which the statute is written, considered with reference to the every-day wants and business of the people for whose government the same was enacted? That being ascertained and applied, the duty of the court is performed, whether the policy thereby subserved is good or bad.

In this case it is not claimed that there was a written contract from which the lien arises, but the same is claimed under a verbal contract. The statute provides

that "If the contract, order or agreement be verbal, a duplicate copy of the bill of particulars shall be made under oath, one to be delivered to the clerk to be filed and recorded as provided for written contracts, and the other to be served upon the party owing the debt." This language does not in terms direct that the terms of the verbal contract shall be set out with the bill of particulars in the paper to be recorded, but upon the contrary the fair import of the language conveys the idea that it was not intended that verbal contracts should be set out, or that contracts by law implied from the acts of the parties should be put into words and recorded. In case of written contracts the statute expressly requires the same to be recorded. It further provides that "when such *contract or account* is filed and recorded it shall be deemed sufficient diligence," etc.; not when such *contract and account* is filed and recorded.

In this case the account filed states "that said work was done at the request and with the approval of said Pool." This was enough, if true, to raise an implied contract to pay for the same, which certainly was all that the owner of the property or any other person could require to put them upon notice of the extent and character of the mechanic's demand sought to be secured by the lien. The statute not requiring more, it must be held sufficient.

Was the bill of particulars sufficiently full and certain? The statute does not define the term "bill of particulars," and we must look to the purposes and reasons which required the making of the same in order to determine what is meant thereby. In so far as the owner is concerned, the manifest reason for giving to him a bill of particulars is to give him notice of the matter for which he stands charged and of the sum for which the lien is claimed. In so far as it concerns other persons than the owner of the property, it is required that they may have notice of the extent and character of the claim for which

the lien exists, or at the utmost that they may have such knowledge as will enable to determine whether a lien upon the property really exists or not.

Whatever puts parties upon notice of these facts must be regarded as a sufficient "bill of particulars." The item in this case was, "To painting house, out and inside, two coats, $405;" the number of the lots and block upon which the house stood on which the labor was done were given, and the same was stated to be in Galveston, Texas.

The paper recorded did not show that there was an express verbal contract to pay the named sum for painting the house, but the evidence shows that such was the case; this does not show a variance in the contract as made and as would be implied from the paper recorded; and we only refer to this matter here for the reason that when an entire job is done under contract the same reason and necessity do not exist for giving the various items of work or material as would exist in a case where there was no express contract, under which uncertain work is to be done for a sum certain. When an entire work is done under an express verbal contract, when both labor and material enter into the same, the reason of the requirement would not render it necessary to set out each item of material and labor furnished or done, but the same may be aggregated as one item, and it will be sufficient. Phillips on Mechanics' Liens, 350, 352, and citations.

A substantial compliance with the requirements of the statute must be had or the lien does not exist; but a construction so strict as in effect to require something done which the statute in neither terms nor spirit requires, is to legislate terms into the statute.

The account of Wedemeyer & Schulte was filed within the time provided by the statute, and that it did not bear the exact date on which the work was completed is not believed to have been important.

The objection of the appellant to the paper offered in

evidence and purporting to be a duplicate of the paper which was recorded by C. H. Moore & Co., to acquire a lien, should have been sustained; for the certificate of the constable was not sufficient or competent evidence of service of same on Pool.

It is only when an act is done by a constable in the performance of some official duty imposed upon him by law, that his return becomes sufficient or admissible evidence of his act; such duty was not imposed in the matter now in question.

The constable should have been called as a witness, or proof of the fact otherwise made that a duplicate of the paper recorded was delivered to Pool in order to fix the lien; there being no proof of that fact, no lien was shown to exist.

The agreement of the parties entered into for the purpose of the trial must be held binding upon them and conclusive of the facts therein admitted to be established. It provided that " the following facts are hereby agreed upon, and are to be considered as established upon the trial of the above cause without the introduction of evidence. . . . The value of the material furnished by C. H. Moore & Co. was $802.05, and was sold and charged to Sandford."

The legal effect of this agreement was to establish that the material furnished by Moore & Co. was not originally sold to Pool but to Sandford, and upon his credit; but while this is true, it is believed that the court did not err in permitting the witness Schadt to testify as to the agreement of Pool to pay for the material.

The pleadings of the appellant did not set up the statute of frauds as a defense in this case, and in the absence of such a defense, which he might waive by not pleading it, even if the credit was given originally to Sandford, Pool might be held liable personally for the value of the material furnished at his request and for which he

promised to pay, and this notwithstanding such promise was not in writing. League v. Davis, 53 Tex., 9; Erhard v. Callighan, 33 Tex., 171; Browne on Statute of Frauds, 508; Lead. Cas. in Equity, vol. 1, part 2, 1042, 1062.

In this case there was no objection made to proof of a verbal promise by Pool to pay for the material furnished, upon the ground that the promise was not in writing, and if such a defense could be made under the general denial, which is not now necessary to decide, the failure to object to the evidence of Schadt upon that ground, upon principle and upon the authorities above referred to, must be held to be a waiver of that defense.

The rule is that a party must make the objections upon which he relies in the court below, and such as are not then made cannot be raised in this court for the first time.

It is urged that the court erred in subjecting the interest of Mr. Pool to sale for the satisfaction of the lien established by the court upon the property upon which the work was done.

We do not see the force of this objection; the property was community property of Mr. Pool and his wife, who died pending the suit, but there was no averment of that fact in any of the pleadings.

While it is true that the lien would be a charge upon the entire property, yet in the absence of some affirmative action taken by the appellant to have it so declared, he surely has not been injured, and cannot complain that his interest in the property is subjected for sale to pay a debt for which he is liable and upon which a lien has been established.

The principle applicable to a suit for partition, in which all parties in interest must be made parties to the suit, has no application to this case. If on account of the sale of Pool's interest in the property he is compelled to pay a debt which is a charge upon the entire community interest, then the equities arising between him and his

children can be adjusted whenever he may desire to have the same done.

But the fact that such equities may arise in the future furnishes no sufficient reason why his interest in the property should not be sold to satisfy such liens as exist thereon.

There being no error in the judgment of the court below, in so far as the same affects the judgment rendered in favor of Wedemeyer & Schulte v. Wm. Pool, the same is in all things affirmed; but in so far as the judgment of the court below established a lien in favor of C. H. Moore & Co., the same is erroneous, and the judgment of the court below in that respect will be reformed, but in all other respects the judgment rendered in favor of C. H. Moore & Co. is affirmed; Wm. Pool as against C. H. Moore & Co. to recover the costs of his appeal, and Wedemeyer & Schulte to recover their costs in this appeal from Wm. Pool.

.JUDGMENT REFORMED.

[Opinion delivered February 17, 1882.]